Morning, ladies and gentlemen. We'll take the cases that are to be argued in the order in which they appear on the calendar. And the first case is Ding v. Ashcroft. Good morning, Your Honors. If it pleases the Court, my name is William Kiang, representing the Petitioner. At the close of the asylum marriage hearing before the immigration judge, the government trial attorney stated in his closing statement that, quote, no doubt this woman had had an abortion and she may have problems because she was pregnant without being married. And the immigration judge, in his decision, stated that it appeared to the Court that her abortion was not forced. Now, in so doing, the immigration judge summarized excluded a very crucial piece of evidence, which is the abortion verification certificate from the Petitioner's medical records. The reason for the exclusion is because the judge said that the document did not conform to the authentication requirement by the Foreign Service, the United States Foreign Service. Now, the Petitioner, through counsel, who was me, did try in good faith to have that document authenticated. We requested guidance from the American consulate in Guangzhou, China, where the Petitioner came from, for guidance how to do authentication. That was in 1999 when these cases first appeared that required authentication. And the consulate told us in order for them to authenticate such documents, Chinese documents, we must first seek authentication through the Chinese Foreign Affairs Office. It's the counterpart to the American consulate. And we did that also. The Chinese Foreign Affairs Office replied in writing, quote, we are very sorry to tell you that we cannot help you do the authentication. So we did, in good faith, try to do the authentication. And the reason why the Chinese government is not willing to help us is very obvious, because such documents, an abortion certificate in the use in the United States can for no other purpose but for applying for political asylum. And just on the Can I just, because the IJA actually found that there was an abortion, and the document that you're discussing reflects that there was an abortion, but the IJA found it, and the document doesn't say anything more. It doesn't really go to the issue where the IJA found against you, which is whether or not it was forced. Does this really matter anymore? Because the IJA did find the abortion Yes, Your Honor. The abortion was not an issue. However, the forced or voluntary is an issue. The government argued that, just like Your Honor said, on the document itself, it does not say forced. This Honorable Court held in Bonanno's Was there a box on the document that they were supposed to check if they forced it? No, Your Honor. It's just a letter form from the hospital, from their verification medical records. However, I think the document itself shows some proof. It does say that the abortion was due to out-of-plan pregnancy. Out-of-plan means violation of Chinese birth control plan. Of course, the Chinese government would not admit in writing that they forced somebody to do abortion. This Court held that the persecutors are highly likely to provide their victims of F-Davis, attesting to their acts of persecution. Now on the other hand, on the other hand, the Court, the government will argue that this document, this so-called abortion certificate, according to the United States country condition report, this kind of document is only issued to people who voluntarily do abortion so that they can use this certificate to get a two-week sick leave, which is a right afforded by the Chinese law. However, the petitioner in this case got this document, not a contemporaneous document at the time of abortion. She got it six years later. So this document was not for the purpose of getting a sick leave. And the reason she explained to the immigration judge that she did not need the certificate at the time of the abortion was because the birth control director of her unit personally took her to the hospital. The abortion was known to the work unit leadership already, so she was not issued a contemporaneous birth abortion certificate. This corroborates with the country condition report that her Is there anything about this document that would indicate that it's not authentic? Yes, Your Honor. There will be on page, let me, on the administrative record, page 391 and 392, 392 being the Chinese version. If it were authenticated, it would bear the Chinese government's seal and the U.S. consulate's seal. Okay. Well, let's get beyond the document and tell us about the rest of All right, Your Honor. Now, the immigration judge in this case found no inconsistency. The only reason Well, he thought that she should have gotten off the table when she was being, when the procedure was being performed, that she should have just gotten up and walked off if she didn't enjoy it. Yes, Your Honor. The immigration judge found that the respondent was, the petitioner, I'm sorry, the petitioner was cooperative throughout the whole ordeal. The immigration found that, the immigration judge found that the reason he thought it was a voluntary cooperation abortion was because the petitioner voluntarily attended the birth control reeducation class for a month. The petitioner voluntarily went to the hospital and she was not restrained physically on the surgical table. And her bonus, year-end bonus was not forfeited for that year. However, the immigration judge misquoted all the facts on these points. First of all, the petitioner, the reason she went to the reeducation class was for, because she was And she went to the education class to do self-criticism. Even in her self-criticism, she wrote to her leadership that she opposed forced abortion. She wanted to have the child with her lover. And secondly, when she went to the hospital, she was taken physically when she was still crying by three birth control officials. And in the hospital, in the surgical room, she refused to go and she was, she put, she positioned herself on the floor. And two people came and physically lifted her up onto the table, onto the operation table. And even at the operation table, she was wiggling, she was moving around. And the doctor had to warn her to quit moving around because the surgery was scraping up the uterus. And it would be dangerous if she moves around. And finally, the record showed that the record showed that her last year, the year 1994, bonus was forfeited, contrary to what the immigration judge found. The immigration judge also found that the fact that the respondent, I'm sorry, the petitioner, because the immigration proceedings, she's called a respondent. The petitioner went to deal and she returned to China. It showed that she had no fear. Why didn't she apply for asylum in Thailand or Hong Kong? The fact was in 1994, April, she went to Thailand for business only for a few days. And no, no evidence showed that Thailand government at that time would provide, would afford abortion as a ground for asylum. Even the record showed that the record showed that the petitioner, I'm sorry, the petitioner  in Thailand? Thanks to Senator Jesse Helms. What relief are you asking for? Your Honor, I would ask the Court to find the petitioner a credible witness. And if that is so And if we would agree with you on that, then what happens? If that is so, I would further ask the Court not even to remand the case to the BIA, because if the petitioner is found credible, she had abortion, the evidence showed that it was coerced, then she's eligible for political asylum. According to the latest BIA. How about withholding? She's not even seeking withholding. Withholding, if she's eligible for asylum, so she's not seeking withholding, which has the highest standard of proof. The latest case from a BIA is the matter of YTL, which says if a person suffers persecution like sterilization or abortion, forcibly, because of violation of birth control policy, that persecution is forever, because that person loses forever. Which, yeah, go ahead. So what does that lead you to? Because that person suffers persecution forever, because the person loses a child or is forbidden to have more children in the future. So wouldn't that entail you the withholding? Your Honor, yes, I would say the petitioner is eligible for withholding, but we are not seeking that. Why aren't you seeking it? Your Honor, if the ---- Shouldn't she be seeking all the forms of relief that are possibly available to her? Well, she also asked for the relief and the Convention against Torture, but we are not seeking that. We will be satisfied ---- Just out of curiosity, would you answer Judge Wardlow's question? When you get asylum, that means the Attorney General can let you in if he feels like it. They've got discretion. That's right, Your Honor. In withholding, there is no discretion. That's right. However, asylum ---- Also, there's a numerical limit on the number of people who can be admitted with asylum. That's right. And there isn't on withholding. That's right, Your Honor. So why are you not seeking withholding? Asylum will grant the petitioner ultimate relief of a green card. No, if you get it. But the fact that she's eligible doesn't mean you'll get it, does it? Well, if it pleases the Court, then we'll ask. No, no, I have just as curious. No, because even the Immigration Court proceeding, once the judge grants asylum, the judge will usually automatically discard the withholding claim. How many ---- I mean, in how many of these cases where, say, we reverse the adverse credibility and say that they're statutorily eligible for asylum, do they ---- I mean, do you have statistics? Do the BIA ---- does the BIA just ---- Your Honor, I do not have. I only have my own cases, only a few cases. But they were all granted by the ---- either the BIA or the remanded judge granted. So the ---- The brief says, the final paragraph, since the disposition turns out to be no voted, et cetera, of credibility, should this Honorable, I assume you mean Court, find the petitioner credible she is eligible for a grant of asylum and withholding of removal? Yes, Your Honor. Are you dropping that claim now at oral argument? Your Honor, I believe the petitioner is eligible for asylum. If the Court grants that, we would not seek her withholding. But if the Court ---- Let me ask you this. What happens if there's under the statute, there's only a ---- there's a thousand ---- That's right. ---- limit cases a year? That's right. Right? Okay. Now, what happens if it comes up and the government's already granted a thousand cases? Your Honor ---- Does she just get in line or what happens? That's right. The wait ---- You know how long the wait list is? It's about three years now. But it's getting shorter and shorter. So it's three years. So what happens in the intervening three years? Then she gets a work authorization. She can travel with advance parole to leave the country. Basically, the only difference between the final grant and the conditional grant is that she has to wait for the final grant. Otherwise, everything is the same. So the waiting period ---- Now, there is no guarantee, is there, that the Attorney General will grant her, you know, exercise his discretion in her favor? In other words, does the Attorney General have to grant her asylum if we say she's eligible? Once she is granted a conditional grant. No, no. But does he even have to grant her a conditional grant of asylum? But if she is legally eligible for asylum, the only thing remaining would be the discretionary consideration. Does he have to exercise that discretion in her favor? Yes, Your Honor. He does? Asylum is a discretionary leave. However, the immigration judge in this case, the discretion was the discretion. Is there a regulation that says he has to exercise his discretion in her favor? Yes, Your Honor. In the matter of YTL, it stated very clearly that. Now, Your Honor ---- All right. Okay. I'm sorry. One last thing is the discretionary denial of asylum in this particular case. The immigration judge found that she was in good health, she has no significant family ties, therefore denied. And I believe that is abuse of discretion. Matter of PULA says very clearly that only most egregious conduct, such as forced documents to enter the United States, forced claim to United States citizenship, criminal convictions, deserves that kind of negative discretionary leave. Being in good health, has no family ties, is not that serious. Thank you. Thank you very much, Your Honor. Good morning, Your Honors. My name is Margaret Newell. I'm an attorney with the Department of Justice and the Office of Immigration and Litigation. I'm here on behalf of Respondent in the Dane v. Ashcroft case number 03-7103 or 1013. Your Honor, I think that Petitioner's initial focus on the exclusion of documents here is telling in that he is hoping that the Court will not focus on the judge's actual basis for his ruling, which is that the Petitioner's testimony was not credible because it was substantially inconsistent on key elements of her claim, meaning her claim that the abortion that she underwent in China was forced. That is the crux of this case. The evidence that was excluded was excluded under the Court's discretion and that discretion was not abused because the Petitioner not only did not follow the agency's regulations requiring certain steps for authentication, but actually did not satisfactorily authenticate those documents in other ways. You can see the Perlmutter case that was decided by this jurisdiction shows that the judge's decision was not an abuse of discretion. It was under the rules of evidence, but it did say that the testimony of someone who just requested those documents and received them would not be a satisfactory means of authentication. At any rate you've written that the I.J. found that she had suffered, that she had had an abortion. The I.J. expressed that he did not doubt that she had an abortion. Okay. So what in the record then do you think leads to his conclusion that there was insubstantial evidence to show that it was forced? What in your view supports that? There are three bases that the judge specifically outlines. I believe that the record also contains other support. I'll address that. Now, do you read the statute as requiring that the Petitioner has to engage in physical resistance at the time of the abortion? Your Honor, the statute is not that clear. It's too complicated. Well, how would you read it? I'm just asking you. How would you read it? The statute just says that someone who has a forced – who has been forced to undergo an abortion, it says forced abortion, would be eligible for asylum, but it does not further define forced. That's left to the agency to determine on a case-by-case basis. And how does the agency define forced? Do you must physically resist? Your Honor, that finding was not specifically made by the Board in this case. So you say the agency has to define it, but it hasn't defined it, is that right? That's correct, sir. Okay. Your Honor, if the Court were to find that the Petitioner were credible, I believe that the case would have to be remanded back to the agency to, in the first instance, give a definition of that legal term as the, you know, as the agency who's in charge of that. Well, what's the ordinary common meaning of the word forced? I wish I would have looked it up in Webster's before I came, but – Well, I've looked it up in Webster's. I mean, forced is very commonly defined, right? Your Honor, I suppose that there are common definitions of it. Would the Court like to tell me what you found in Webster's? Well, forced doesn't necessarily – I wrote it if I could find it. Forced doesn't necessarily imply a certain type of force. I mean, there's many different kinds of force that can be brought to bear on someone. It could be physical, mental, moral. Here's a definition. Compel or oblige a person oneself to do, into doing, or to or into a course of action, rape, especially a woman, to compel or constrain by physical, mental, moral, or circumstantial means. That was the New Shorter Oxford English Dictionary. And the Webster's New International Dictionary says – defines force as to constrain or compel by physical, moral, or intellectual means or by exigencies of circumstances. Pretty similar elements to both definitions. And in this case, the IJ seemed to require that there be evidence of physical restraint during the abortion. Yet that isn't – that is somewhat inconsistent with the ordinary dictionary definitions of the word force. Would you agree? I believe that the judge was actually – I don't – there was not an explicit finding about what – what type of force would be entailed in this decision. But the judge instead just merely found that the Petitioner was not credible. And he based one of his – one of the reasons he found her not credible was that, although she testified in the record on page 136 that she was forced to have an abortion, her other testimony regarding the circumstances of her abortion was inconsistent with that – with that statement. And if I could point out to the judge the different ones, I think it might be – What is – what – excuse me. What is inconsistent with her statement that she was forced to have an abortion, coerced, compelled by psychological or other pressure? What's inconsistent with that? There are three main things that the judge pointed out. She voluntarily informed her employer that she was pregnant, although she knew that the consequences of that would be that she had an abortion. The testimony was that she went with her friend, lover, companion, whatever he was, that she went with him. And they worked for the – went to the employer and said, can you help us get a permit? Can you help us get authorization? I think it – I think she might have figured out that sooner or later the employer would discover this anyway. She may have, although she could have taken a leave of absence or something. The profile, the asylum profile, in fact, in this record, indicates that, although there may have been instances in China of forced abortion, many women avoided by – by leaving the area for a short time. But at any rate, it's not – it's not at this stage appropriate to conjecture about what might be another good reason. We're not conjecturing. The testimony is she went with her friend to the employer to see if they could get a permit so they could get married. Yes, Your Honor. And what does he say about that? He denied their request. You'd like to know the second reason. So that's the first reason, that they went to the employer and asked for a permit. Yes, Your Honor. That's inconsistent. What's the second inconsistency? Another inconsistency is, although Petitioner is arguing that she was made to attend classes, I'd refer you to her brief on page 5 of the month-long birth control class, the record actually reflects that she was asked to go to the class on 143 and that she was advised to go to the class on 174. There's no – Wasn't she suspended from work and forced to go to the class? She was suspended from work. She was able to go to the class and advised to go to the class, Your Honor. And I don't know that the term in the record was suspended. I don't have the page number on that. I'm sorry. But she did state that she went because she was advised to go, and she certainly wasn't terminated from work. And it doesn't – there's no indication in the record that she went without pay during that time. So I'm not sure. And I do assume that she was – that she suspended from work with pay so that she could, on their advice, take their advice and attend these re-education classes. I believe the record supports that. And what happens to people who don't take the advice of these authorities? That's not in the record, Your Honor. And the third inconsistency is, I gather, that at the hospital, the respondent underwent the procedure without being physically restrained. That's true, Your Honor. And although I believe this is a delicate subject matter, I would refer the Court to pages 207 and 208 of the record about this. It's interesting the way that the Petitioner testified about this particular – when the time came, how she reacted. She was asked – she had to be asked six times about whether she was restrained during the procedure. And she was very evasive in her testimony. So I believe that that supports the judge's findings. The pages – the pages of page 207 and 208. It's on cross. Yes, it was. And the judge was asking questions as well, Your Honor. First? She said that she – two people forced her onto the bed, the surgical table. And then she said that she was not – Why isn't that enough right there? Let me just ask you this. Why isn't that enough right there for force? Your Honor, the point is that she has inconsistent testimony. Later, she said that two people did not force her onto the table, that she was actually assisted onto the table by a nurse. That is the specific inconsistency that would be valid based on the finding of a nurse at the hospital. So she was on the floor. She testified she was on the floor. Well, Your Honor, I don't see where she says she was on the floor in the surgical room. I looked for that, and I couldn't find that she was on the floor. Why don't you look at page 208? This – there were two persons. There was a person on each side, and then I was, because I was on the floor as they pulled me up. That's the testimony. Okay. I'm sorry, Your Honor, about the floor. That's the cross-examination. Okay. But at any rate, later on page 208, she just says that the nurse assisted her and that, no, the two people did not take her from the floor onto the table, that that happened before she went into the van. So she contradicts her testimony there. And only one testimony is enough under the Chemchev precedent in this Court. One piece of testimony on a very crucial element in this case that is inconsistent is enough for a finding of adverse credibility. And this Court, under the deferential standard, really has to find that there is substantial evidence and that the evidence doesn't compel any reasonable person to find other than what the judge found. These inconsistencies about her, about what happened in the surgical room are a valid basis for a finding of credibility. He didn't, the I.J. didn't point that out as a basis for his decision. He did find that she was, her testimony was not consistent about. No, what he was saying, he said that he actually misrepresented what she was saying because he says that respondent testified she went with the supervisor to the hospital without further protest, which isn't what she said. And then he just, he doesn't talk about any details or inconsistencies in the actual hospital room. He just goes right to, at the hospital, the respondent underwent the procedure without being physically restrained. I was referring to that, to those statements by the judge. That was what I understood that the judge meant. Well, that's not what the judge said. And the judge is required to be specific in his reasons that he gives for finding that the petitioner is incredible. It's true that the judge must state specific reasons. And he did, but he did refer to her testimony being inconsistent with respect to what she was supposed to say. But he has to say in what respect it's inconsistent. What's inconsistent? He has to give the facts that show the inconsistency. And you have come up with a new inconsistency that may or may not have any validity, but it's one that the judge didn't mention. Well, Your Honor, I believe that the judge did find that she was inconsistent with respect to whether she was forced. I mean, this, whether she was forced onto the table or not, is relevant to whether she was forced to have an abortion. He said at the end of his, at the end of his. The record supports that at any rate. At the end of his discussion about persecution on account of political opinion, he says on page 54 of the record, Based on Respondent's testimony, this Court believes that the Respondent's behavior was not consistent with someone who underwent a forced abortion. He's not talking about her inconsistencies in her testimony. He's just talking about what she did. It's not something that one would do if they were really, you know, opposed to getting an abortion, having an abortion. Your Honor, in arguing this petition for review, I'm glad that that wasn't the only judge made in support of his finding. But he did go on to actually specify inconsistencies. Another one that I actually haven't gotten to yet is that her testimony that she had been forced to be, to have an abortion is undermined by her failure to seek asylum in a couple of different countries that she went to two years after the abortion procedure in 1994. Is there any evidence that either, what were the countries, Thailand? Hong Kong. Hong Kong granted asylum based on opposition to or being victimized by Chinese birth control policy? Your Honor, there is no, I believe there's no evidence either way about whether there had been specific instances of a granted asylum. So do you know whether Thailand and Hong Kong actually grant asylum on that basis? I don't know, Your Honor. Take outside the record. Do you know whether, well, it would be a law. You can look at the law before you come to argue. Do you know whether the United States actually granted asylum on the basis of forced sterilization or abortion at the time that the petitioner left the country? I believe it could have been possible that the statute did. Well, in fact, it was not enacted at that time. The statute was not in effect at that time, was it? The statute that specifically refers to that would not have been in effect at that time, but I suppose someone could have come with the claim that it was persecution and proven that there was persecution. Congress enacted this statute for a reason. It probably had something to do with the matter. I wish I knew what it was. Let me ask you a question, because you're here to argue a couple of cases, I think. Yes, Your Honor. As you may have gathered, we're in the middle of an ill-fated experiment, and we're trying to see how you can decide these immigration cases without giving them the normal attention cases get, which is why we have 12 cases scheduled today instead of our normal load. And some are being argued and some aren't. That's also a part of this ingenious plan. One of the cases not being argued is a case called Quo, and so we can't ask a government lawyer a question about it. But it has a similar problem to the one that I wanted to ask you about here, and that is what it is you have to fear in order to get either asylum or withholding once you've had an abortion or four abortions or you've been sterilized. If you've been sterilized, for example, and you're entitled to asylum, I assume if you've been sterilized, you are entitled to asylum. Is it you need more for withholding of persecution than you do for the asylum? And what is it? Do you have to be afraid they're going to sterilize you again? I believe that under the statute, 8 U.S.C. 1101, 1101A42, later, fear of later persecution on account of that earlier forced procedure could be also a basis. But what? What more can they do to you once they've sterilized you? There are many forms of persecution could take, Your Honor. Well, I know. They could hang you up by your toes. But that's – is that what this statute means, that once you've been sterilized or aborted, yes, you can get the relief if they're also going to hang you up from your toes the next time? Well, Your Honor, the problem I have, and I believe the Court has, is that the Board, as the agency charged with the responsibility of interpreting the statute, has not decided yet. And in that instance, if the Court needs to find out what the Board would think, which I believe that is required under exhaustion of remedies requirements, the Board should remand for a decision. And then the Board could review that decision validly, without jurisdiction to do so. So you don't have any idea what the statute means? It's not for me to say, Your Honor. It's really for the Board to say. Well, I thought you went to law school and got a degree and you were here from the Department of Justice. But you don't – you don't understand what the statute means? Your Honor, I could make an interpretation, but it would not have any – It wouldn't have any binding effect on us. That's right. And I don't know – Well, that's okay. I mean, you're an officer of the Court. We would be happy to have your legal interpretation. It might help us understand the statute, if you could understand it. Your Honor, that's very flattering. But I don't even feel like I would want to say that. I mean, I have not even really done what I believe would be a responsible analysis to determine what I think you're talking about. Are you aware that there are cases from the BIA that have interpreted the statute and that they interpret the statute to mean that if you have had a past forced sterilization or abortion, that you're automatically entitled to both asylum and withholding of deportation? That's the Board's interpretation in a series of cases. Are you aware of those cases? I'm not aware of those cases, Your Honor. I wish I could answer otherwise. It would be helpful if, when Department of Justice lawyers come to argue about the law of this statute and the remedies under it, that you did the homework so that you could help us with that. Yes, Your Honor. Especially when we're doing 12 cases in a day. The BIA has decided just to rubber stamp all the IJ decisions and send them up to us. Your Honor, I apologize for letting you down. I believed that the case was involving an adverse credibility finding and not an interpretation of the statute, just because the immigration judge did not interpret the statute about whether what the definition of forced was and what the definition of later persecution might have been. So I believe that this Court doesn't have jurisdiction to decide those issues. If we were to disagree with the Board's assessment on the credibility issue, what is your position that we should do, then? If the Court were to find that the judge's finding of adverse credibility is in error, then the Court should remand under Ventura for a decision about whether, if her testimony is true, then did she or is she eligible for asylum and should she be granted it? Why wouldn't she be eligible? What possibly more do you need than she had a forced abortion? Isn't that what the statute gives you asylum for? Well, Your Honor, for instance, the definition of forced is unclear. So I don't think that that is a foregone conclusion, given that the issue of forced abortion is unsatisfactory. Well, we could keep sending this case back and forth eight times while the Board issues opinions about whether this constitutes forced abortion. I'm sorry, but I don't think I wouldn't take just once if the Court were to remand for a decision. The I.J. said that one of the reasons he gave four reasons that I could discern. Three of them aren't supported by the record. But the fourth reason is, if you believe her testimony, she said she was not physically restrained during the operation itself. So obviously this I.J. found that physical restraint while she's on the table with her legs spread apart, dilated by some kind of mechanical appliance, which I'm sure you've experienced as well in your lifetime, that the fact she didn't jump up from the table or that she wasn't tied down to the table is a component of force under the statute. That's what he held. And the BIA had a chance to say that's correct or that's not correct, and the BIA said it's correct. You know, where the BIA adopted the I.J. decision. So that issue is squarely in front of us now. The BIA had the chance and the I.J. did roll. I don't see why it's not right in front of us, why we would send it back at all. Well, Your Honor, the I.J. actually did not explicitly find that, you know, declare a definition of what force meant and whether physical restraint was required. And I believe that, consistent with other opinions of this Court, such as whether an adverse credibility finding is implicit or explicit, there's a big difference between those two. And if it's only an implicit, if the Court finds an implicit finding only, then I believe that it wouldn't be sufficient under the precedent of this Court. Well, the issue here is whether she, her abortion was voluntary or forced. The I.J. says her testimony indicates to the Court that her abortion was voluntary and not forced. So if we were to find that that was incorrect, that the testimony does not indicate that it was voluntary rather than forced, and it is incorrect in finding that it was voluntary, what else is it other than forced? Well, okay. I guess we can struggle with that problem afterwards. But I must say this is not one of the Justice Department's finest moments, this decision. Well, Your Honor, I'd just say in conclusion that Respondent Sperger denial of or a dismissal denial of the petition for refute. Thank you, Your Honor. Thank you, Kath. Thank you. The case to historically will be submitted. The next case scheduled for oral argument is Zong v. Ashcroft. Thank you, Your Honor. I almost forgot the question yesterday. That would be good. I miss the set. I know. I miss it. I miss it. All right.
judges: Reinhardt, Wardlaw, Paez